UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

JONATHAN KAPPOCK,

     Plaintiff,

v.

INGALLS MARINE DIESEL, INC., a
Florida corporation, and MATTHEW
INGALLS, individually,

     Defendants.

_____/

**COMPLAINT**

Plaintiff, Jonathan Kappock ("Kappock"), through his undersigned attorneys, files this Complaint against the Defendants, Ingalls Marine Diesel, Inc., a Florida corporation, (the "corporate Defendant") and Matthew Ingalls ("Defendant Ingalls"), individually, (collectively referred to as "Defendants"), and alleges:

**JURISDICTION AND VENUE**

1.    This suit is brought against the Defendants pursuant to 29 U.S.C. § 201 *et seq.* ("Fair Labor Standards Act" or "FLSA").

2.    Jurisdiction is conferred upon this Court by:

    (a)    28 U.S.C. § 1331;

    (b)    28 U.S.C. § 1343; and

    (c)    29 U.S.C. § 216(b), which allows for a FLSA claim to be brought in any court of competent jurisdiction.

3.    Venue is proper for the Southern District of Florida because:

(a)     Kappock was employed in the Southern District of Florida by the corporate Defendant which at all material times conducted, and continues to conduct, business in Palm Beach County; and

(b)     Additionally, venue lies because the acts that gave rise to Plaintiff's claims occurred in the Southern District of Florida and because the corporate Defendant keeps an office for the transaction of its customary business in this district (corporate Defendant principal place of business is in Palm Beach), and Matthew Ingalls resides in Palm Beach County.

## CONDITIONS PRECEDENT/ADMINISTRATIVE EXHAUSTION

4.     Plaintiff has complied with all conditions precedent in this case, or they have been waived.

## PARTIES

5.     Kappock resides within this judicial district.

6.     Defendant Ingalls Marine Diesel, Inc. at all times material, conducted substantial and continuous business in this judicial district, and are subject to the laws of the State of Florida and the United States.  The corporate Defendant owns and operates a business in West Palm Beach, Florida, at which for all material times Kappock worked for and his labor benefited.

7.     The corporate Defendant paid employees and paid Kappock (through Defendant Ingalls) and has gross annual sales volume that greatly exceeds $500,000 annually.  The corporate Defendant has two or more employees engaged in commerce, as they have two or more employees who handle, work on, and use goods or materials that have been moved in interstate commerce and/or manufactured outside the state of Florida.  For example, Defendant has at least 15 employees, two or more who use computers, computer software, office supplies, copiers which were manufactured outside the State of Florida (and thus have moved in interstate commerce).  Further, the Defendant has various employees make long distance phone calls (suppliers, internet purchases, customers, and

others) and sent emails to individuals who reside out of the State of Florida regularly and recurrently to effectively communicate for the businesses to operate.

8.      Additionally, Kappock is entitled to individual coverage, as he regularly and recurrently made calls to customers, manufacturers, suppliers, prospective customers, and customers across state lines and thus he participated in the actual movements of goods or services and commerce across state lines.

9.      Individual Defendant Ingalls, is the owner of the corporate Defendant and operates its day-to-day business and has operational control over the corporate Defendant deciding financial decisions and having say over numerous employees and directing their work day-to-day, including how much they would be paid and when they would be paid, as the individual Defendant had the power to hire and fire, managed the company daily, and was ultimately responsible for the profitability of the business.

10.     Concerning Kappock, Defendant Ingalls told him what to do, assigned him work, managed the operations day-to-day, determined how much and whether he would be paid, and Kappock had to follow Defendant Ingall's orders.

11.     The corporate Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act, and so too is the individual Defendant.

12.     The corporate Defendant is an "enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act.  The corporate Defendant is an enterprise "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act.  During all times relevant to this action, the corporate Defendant was an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

13.     Kappock was an "employee" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act.

14.     Kappock was a non-exempt employee of Defendant who was subject to the payroll practices and procedures described in Paragraphs 21, 22, and 23 below, and who worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint. At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that Kappock performed services for Defendant for which no provision was made to properly pay for those hours in which overtime was required to be paid, which requires the payment of wages at time and one-half for all hours worked in excess of forty (40) hours in each workweek.

**STATEMENT OF FACTS**

15.     Kappock worked for the Defendant from August 2020 to the end of January 2021, performing various duties.  Kappock's job included printing invoices, coordinating meetings with customers, answering sales questions for customers and potential customers, coordinating with subcontractors and sourcing material for projects, updating a customers and potential customers on the upcoming schedule at the corporate Defendant for installations and repairs, discussing installation options with customers and potential customers,  procuring sales of Seakeeper products, picking up supplies for subcontractors, coordinating with subcontractors, resolving minor technical issues for corporate Defendant, meeting with subcontractors to review upcoming projects, providing customers with technical support, inspecting vessels possible installations and repairs, and handling tasks like copying and filing.

16.     Kappock had no ability to hire or fire or make effective recommendations for such decisions, nor did he supervise two or more full-time employees.  Kappock was an hourly nonexempt employee entitled to overtime.  Kappock was required to work "off the clock" because the Defendants required more work than could be performed within Kappock's scheduled hours and Defendants knew he was working those hours. Defendants directed Kappock clock out but required him to remain on the job to attend to customers.  Kappock did not have the ability to hire

or fire anyone (nor did he hire or fire anyone), and he did not regularly and customarily direct the work of any employees, much less two or more full-time workers.

17.     Kappock was only given tasks that were designed to facilitate production work of the Defendant, such as assisting customers and potential customers with their products and services, all of which consisted of regular, recurrent, and routine work that did not involve his exercising independent judgment and discretion on matters of significance.

18.     During Kappock's employment, Kappock did not have any authority to interview, select, and/or train employees.  Kappock did not have any authority to set and adjust the rates of pay and hours of work for any employees.  Kappock had no authority to direct the work of employees.

19.     While Kappock worked for the Defendants, he never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in status.  While Kappock worked for the Defendants, he never handled employee complaints and grievances, as that was for the Defendants to do.  Also, Kappock never disciplined employees, nor did he have the power or authority to do that.  Kappock never determined any techniques to be used by employees to do their job.  Kappock never apportioned work among any employees, as there were no employees who reported to him to whom to apportion work.  Kappock never determined the type of materials, supplies, machinery, equipment, or tools to be used by any employees, as the Defendants or the employees themselves decided all of that.   Kappock had no involvement in controlling the flow and distribution of materials or merchandise and supplies. Kappock had nothing whatsoever to do with materials, merchandise, or supplies or their distribution. Kappock had no involvement with respect to budgeting.  Kappock was not involved in reviewing any sort of company financial documents or statements of the building, and he did not review any such documents, nor was Kappock supposed to.  Kappock had no involvement in

monitoring or implementing legal compliance measures. There were no legal issues that Kappock had anything to do with in terms of deciding how they would be handled or dealt with while he worked for Defendant, nor did he have anything to do with paperwork concerning new employees or hires. Kappock simply followed the established techniques and procedures with respect to his duties, all of which were repetitive, routine, and recurrent work.

20.     Kappock did not perform work that was directly related to management or general business operations of Defendants or their customers, because Kappock did not perform work directly related to assisting with the running or servicing of the business. Kappock also did not perform work directly related to the management or general business operations of the Defendants because Kappock did not work in a functional area such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

21.     In the course of employment with Defendant, Kappock worked the number of hours required of him, but was not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

22.     Kappock regularly worked in excess of forty (40) hours per workweek—45-50 hours per week on average.

23.     The Defendant should have partial accurate records of hours worked, because it required Kappock to login on a computer (though he was given tasks and worked off the clock when instructed to).

24.     Kappock has retained the undersigned legal counsel to prosecute this action on his behalf, and has agreed to pay them a reasonable fee for their services.

25.     Kappock is entitled to his reasonable attorneys' fees for prosecuting this action, whether or not he is the prevailing party.

### COUNT I – RECOVERY OF OVERTIME COMPENSATION

26.     Kappock re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 25 above as though fully set forth.

27.     Kappock is entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.

28.     By reason of the intentional, willful, and unlawful acts of Defendant, Kappock has suffered damages, *e.g.*, back pay for overtime wages, liquidated damages, and compensatory damages, plus incurring costs and reasonable attorneys' fees.

29.     As a result of the Defendant's willful violations of the Act, and the failure to pay overtime which was not in good faith, as discussed above, Kappock is entitled to liquidated damages as provided in § 216 of the FLSA, and is entitled to recover damages for three (3) years.

WHEREFORE, for workweeks within three (3) years of the filing of this Complaint, Kappock demands judgment against Defendants for the wages and overtime payments due him for the hours worked by him for which he has not been properly compensated (back pay), liquidated damages, reasonable attorneys' fees and costs of suit, and for all proper relief including pre-judgment interest, and any further relief that the Court deems necessary.

### DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: ___October 18, 2021_____

                                                  Respectfully submitted,

                                                  By: s/Allyson Morgado_____
                                                          Chris Kleppin
                                                          Fla. Bar No. 625485
                                                          cklleppin@gkemploymentlaw.com
                                                          Allyson Morgado
                                                          Fla. Bar No. 91506
                                                          amorgado@gkemploymentlaw.com
                                                          The Kleppin Law Firm
                                                          *Attorneys for Plaintiff*
                                                          8751 W. Broward Boulevard
                                                          Suite 105
                                                          Plantation, FL 33324
                                                          Tel: (954) 424-1933
Secondary E-Mail:    assistant@gkemploymentlaw.com

8